UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
GREGORY LYNCH,

                              Plaintiff,

        -against-

NEW YORK STATE URBAN DEVELOPMENT
CORPORATION D/B/A EMPIRE STATE
DEVELOPMENT, HARLEM COMMUNITY
DEVELOPMENT CORPORATION, and VICTORIA A.
GORDON,

                            Defendants.
---------------------------------------------------------------- x

MEMORANDUM &
ORDER

16-cv-5926 (ENV) (VMS)

VITALIANO, D.J.

        Plaintiff Gregory Lynch commenced the instant action on October 25, 2016, bringing claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and 42 U.S.C. § 1981.[1] Dkt. No. 1. Lynch alleges that he was the subject of retaliation as a result of a discrimination claim he had lodged against his supervisor. Defendants New York State Urban Development Corporation d/b/a Empire State Development ("ESD"), Harlem Community Development Corporation ("HCDC") and Victoria A. Gordon, Lynch's supervisor, have moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 46.

        By order, dated May 21, 2018, pursuant to Rule 72, the Court respectfully referred the motion to Magistrate Judge Vera M. Scanlon for a Report & Recommendation ("R&R"). On August 10, 2018, Judge Scanlon issued her R&R, recommending that defendants' motion be

---

[1] The R&R notes that Plaintiff has since discontinued his § 1983 claim. *See* Dkt. No. 56 at 2 n.1.

1

denied. R&R, Dkt. No. 56. Defendants filed objections to the R&R on August 24, 2018, Dkt. No. 57, drawing opposition from Lynch on September 11, 2018. Dkt. No. 58. After a *de novo* review of the objections, Judge Scanlon's R&R is adopted as the opinion of the Court, but only as modified by this Memorandum & Order. Significantly, with that modification, defendants' motion for summary judgment is granted. The reasons follow.

## Background[2]

Lynch remains employed by ESD as a Senior Field Inspector at its Atlantic Yards Project. R&R at 2. He is African-American. *Id.* In September 2010, Lynch was hired to work in HCDC's Weatherization Department as a Senior Inspector. *Id.* at 3. From September 2010 until his transfer in June 2015, Lynch reported to Gordon, and from 2014 until his transfer, he was directly supervised by her. *Id.* Gordon, who is black but of West Indian descent, was, at all relevant times, the Director of Weatherization at HCDC. *Id.*

In 2015, Lynch was interviewed as part of an investigation relating to a lawsuit filed by former HCDC employees, which alleged discrimination by Gordon. *Id.* at 4. Lynch complained to the interviewers that he, too, felt he was "treated unfairly because he was the only black person who was not of West Indian descent in the Weatherization Department." *Id.* Although plaintiff had previously complained, in a 2012 internal complaint, of Gordon's disparate treatment to her subordinates, this was the first time he attributed it to national origin discrimination. *Id.* at 4-5.

Armed with Lynch's account, one of the interviewers filed a complaint on his behalf with

---

[2] The facts are recounted in the light most favorable to plaintiff as the non-moving party, with all reasonable inferences drawn in his favor, as they must be on a motion for summary judgment. The Court assumes familiarity with the material facts outlined in the R&R. *See generally* R&R at 1-14. Neither party disputes Judge Scanlon's characterization of this factual background, and the Court repeats only those facts essential to its disposition of defendants' motion.

ESD against Gordon based on race and national origin discrimination. *Id.* at 5. The complaint investigator observed that Lynch was "initially uncooperative," "missed scheduled meetings, did not respond to messages and did not comply with the request to submit a list of witnesses." *Id.* at 6. She further recommended that Lynch's complaint be dismissed due to his failure to cooperate with the investigation. *Id.* The investigation, ultimately, did not reveal any evidence supporting plaintiff's allegation of discrimination based on race and national origin. *Id.* at 7. ESD adopted the recommendation to dismiss the complaint. *Id.*

Two weeks after the filing of Lynch's internal complaint, Gordon filed a similar complaint of her own based on race, national origin and sex discrimination. *Id.* at 7-8. Gordon's grievance against Lynch was personal, as was his against her. In support of that personal complaint, Gordon alleged that Lynch had been insubordinate and had not fulfilled his work responsibilities because she "was a black Caribbean female in a position of authority over him." *Id.* at 8.

Gordon's complaint was assigned to the same investigator assigned to Lynch's case. *Id.* Some of the coworkers interviewed during this investigation said that they had heard Lynch state that "Ms. Gordon needs to get laid," call her (and other females) a "bitch" and admit that he "struggled taking directives from females." *Id.* at 8-10. Lynch denied making such comments and characterized profanity and vulgar language as commonplace in the Weatherization Department. *Id.* at 10.

The investigator concluded that there was no evidence to substantiate Gordon's allegation of race or national origin discrimination but that there was some evidence of sex-based discrimination, the latter of which was evidenced by Lynch's comments and behavior, as described by his coworkers. *Id.* at 11. ESD placed plaintiff on probation for six months with a

3

direction to refrain from using misogynistic or sexual language at the workplace, and informed him that additional violations could result in his termination. *Id.* at 11.

On or about March 11, 2015, plaintiff was transferred from HCDC to ESD's Atlantic Yards Project in Brooklyn. *Id.* at 12. He had previously expressed interest in being transferred there, and he elected to make the transfer permanent, rather than temporary. *Id.* at 13. In this new position, he retained his job title, duties, responsibilities and salary, and, as a practical bonus, his commute was significantly improved. *Id.* Indeed, plaintiff remains, by all appearances described in the record, happily employed there and does not contend that the transfer constituted an "adverse" action. *Id.* Interestingly, Lynch has not identified any economic damages as a result of the investigation into his behavior or his transfer to Atlantic Yards. In fact, he concedes that he has no economic damages. *Id.* at 13-14.

## Standard of Review

A federal district court must grant summary judgment when, construing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018). The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Sentry Ins. v. Brand Mgmt. Inc.*, 120 F. Supp. 2d 277, 284 (E.D.N.Y. 2015). When assessing the merits of a summary judgment motion, a district court cannot "try issues of fact, but rather [must] 'determine whether there *are* issues of fact to be tried.'" *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 188 (E.D.N.Y. 2014) (quoting *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995)) (emphasis original).

4

Not all facts, however, are material. A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 106 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986). For a dispute over material facts to be "genuine," the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Assertions of fact, moreover, must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

In opposing a motion for summary judgment, the nonmoving party "may not rely solely on 'conclusory allegations or unsubstantiated speculation' in order to defeat" the motion. *S.W. ex rel. Marquis-Abrams,* 46 F. Supp. 3d at 188. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Kindle v. Dejana,* 238 F. Supp. 3d 353 (E.D.N.Y. 2017) (emphasis original). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *Weiss v. Nat'l Westminister Bank PLC,* 278 F. Sup. 3d 636, 640 (E.D.N.Y. 2017) (quoting *Gall v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994)).

Whether the subject matter be the disposition of a summary judgment motion or not, in reviewing a magistrate judge's R&R, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district judge need only be satisfied "that there is no clear error on the face of the record" to accept the reviewed R&R, provided no timely objection has been made in writing. *Urena v. New*

*York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The district judge, moreover, is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). Objections that are general, conclusory, or "merely recite the same arguments presented to the magistrate judge" do not constitute proper objections and are reviewed only for clear error. *Sanders v. City of New York*, No. 12-CV-113 (PKC)(LB), 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015) (citation omitted). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195 (RRM) (RLM), 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

Discussion

I. Absence of Economic Loss

Defendants' opening argument, that they are entitled to judgment because plaintiff failed to identify any economic damages resulting from the alleged "retaliation," is a proposition without legal merit. Not well fleshed out, defendants' brief included a cursory argument contending merely that plaintiff did not suffer damages. Dkt. No. 37, at 20. This, they say, is reason enough to award summary judgment. Plaintiff did not respond to defendants' damages argument in his opposition memorandum, and Judge Scanlon, in her R&R, agreed that plaintiff had not suffered economic damages but did not delve deeper into the issue. R&R at 13-14.[3]

---

[3] Lynch's failure to controvert this point alone, of course, would not be sufficient for the entry of judgment against him. "Rule 56 does not allow district courts to automatically grant summary

6

That finding by Judge Scanlon, though, is hardly a roadblock to the ultimate recovery of damages. A plaintiff can, upon a showing of liability, recover nominal damages, fees and costs in discrimination cases, even when actual damages are not awarded. *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 116 (2d Cir. 2015). If a defendant's liability is established either by way of summary judgment or at trial, the award and amount of any damages would be a question reserved for the jury. That there is no genuine dispute as to the absence of economic damages cannot, itself, supply a ground upon which summary judgment may rest.

II. *McDonnell Douglas* Framework

Judge Scanlon determined that, under the burden-shifting framework applicable to discrimination and retaliation claims under Title VII, NYSHRL and NYCHRL, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), defendants were not entitled to summary judgment. She concluded that there was a genuine issue of material fact as to whether defendants' *post hoc* justification for investigating and punishing Lynch was pretextual. To get to this point, helpfully, right off the start, defendants conceded that Lynch was an employee engaged in a protected activity (*i.e.* filing a discrimination complaint) and that his employer was aware of that activity, but they contested whether Lynch suffered a "materially adverse action" and whether there was a causal connection between the protected activity and the adverse action. R&R at 23. Judge Scanlon determined that "a jury could reasonably conclude that Ms. Gordon's filing of complaint against Plaintiff was a materially adverse action" and that Lynch's protected activity was a "but for" cause of that action. *Id.* at 23-31.

---

judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

7

She also found, however, that defendants had offered evidence that the adverse action was "filed for nonretaliatory reasons, namely, that Plaintiff had refused to follow her instructions; that he had not produced requested work; and that he had subjected her to discrimination because she was a black Caribbean female in a position of authority over him." *Id.* at 31. Relevant to this Court's consideration of the R&R, Defendants "take no issue with the Magistrate Judge's analysis up to this point." Defs. Objs., Dkt. No. 57, at 3. Defendants, instead, focus exclusively on the third and final *McDonnell Douglas* subject of inquiry: pretext. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (plaintiff under *McDonnell Douglas* framework has burden to establish that "defendant's reason is in fact pretext for unlawful discrimination"). Where, as here, "the defendant has articulated a non-retaliatory reason for the employment action," the plaintiff must "come forward with evidence that the defendant's proffered, non-retaliatory reason is a mere pretext for retaliation." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013). Pretext can be established by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.* at 846.

Judge Scanlon determined that a triable issue of fact exists as to whether defendants' justification for investigating and punishing Lynch was pretext, based on the facts that (1) Gordon mentioned Lynch's complaint in her own complaint and (2) Lynch was punished for misogynistic behavior, which he claims was commonplace among co-workers who were not also punished. *See* R&R at 36. Defendants object that neither of these should preclude summary judgment here. They first contend that Gordon's mention of plaintiff's complaint does not establish "but-for" causation because, as Judge Scanlon acknowledged, showing that Gordon was driven by both "retaliatory and non-retaliatory motives . . . would not be sufficient for

Plaintiff to prove his claim." *Id.* at 33 n.11. It is plain, however, that Judge Scanlon was merely rephrasing the standard that governs here: whether an unlawful "motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343, 133 S. Ct. 2517, 2523, 186 L. Ed. 2d 503 (2013).

Defendants add that Judge Scanlon acknowledged that Lynch had failed to demonstrate weaknesses, implausibilities, inconsistencies or contradictions in Gordon's purportedly legitimate reasons for filing her complaint. Defs. Objs. at 5; *see also* R&R at 34. Lynch responds that defendants did not raise the issue of but-for causation in their summary judgment brief and that, in any event, it becomes relevant "in the third stage of the McDonnell Douglas" framework. Pl. Objs., Dkt. No. 61, at 6.

Even crediting plaintiff's argument on causation, however, he cannot overcome the glaring absence of record evidence sufficient to create a genuine dispute that Gordon's personal complaint about him was not pretextual. Plaintiff places great stock in the "implausibility" of a supervisor filing a complaint of discrimination against her subordinate for non-retaliatory reasons. *Id.* at 13 ("[T]he very notion of [it] . . . beggars belief. . . . Not only was Gordon's complaint implausible because she was the manager and plaintiff the subordinate, but it is nonsensical on its face."). Defendants protest the idea that Lynch was singled out for punishment for misogynistic behavior because of his complaint. They argue that he was ultimately punished for language like calling Gordon a "bitch" and that Gordon's complaint never mentioned that word – in other words, he was punished for conduct unearthed and entirely distinct from that raised in Gordon's complaint. *See* Defs. Objs. at 9 (arguing plaintiff is not "similarly situated to the unidentified other [unpunished] employees" because his punishment

was based on "the findings of the independent investigator").

To be sure, Judge Scanlon recognized that, under ordinary circumstances, the investigation and probationary status of Lynch could lead to an inference of retaliation. *See* R&R at 37 (record evidence "seems to imply a difference between [Lynch's] conduct and treatment and that of the West Indian 'clique' who did not complain about Ms. Gordon"). And, because "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus," *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010), and because Gordon's colleagues may have used the same type of language for which he was punished and they were not, there might – absent more – have been a triable issue of fact relating to pretext. But, Lynch's effective acknowledgement of the misogynistic behavior and his factually unsupported assertion that his co-workers do it without penalty do not create a genuine issue of material fact.

A critical additional fact in this case, however, also weighs heavily against Lynch. The alleged "retaliation" against Lynch was not the result of discipline his supervisor sought to impose but, rather, the complaint of another employee entitled to the protection of the same rights that Lynch said Gordon violated as to him. Her complaint was not seeking to advance ESD's disciplinary system but to vindicate her personal rights under law. Gordon, in other words, had a right to file her complaint, and ESD had an obligation to investigate her charge of discrimination. That Gordon is also a supervisor does not deprive her of those rights or vindication of a claim that a co-worker has violated them.[4]

Contextually, on this record, this was a case of two employees asking their mutual

---

[4] Indeed, it is compelling that Gordon eschewed disciplining Lynch for his conduct on her own authority as his supervisor. Instead, she pursued a process that triggered an independent investigation of her complaint, making the hill Lynch had to climb to show pretext even steeper.

employer to resolve claims that the other had committed acts of discrimination in violation of law. *See Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015) (prohibition on employer discriminating against employee "'because [s]he has opposed any practice made an unlawful employment practice by this subchapter,' does not distinguish among entry-level employees, managers, and any other type of employee") (internal citation omitted). Nothing requires "a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 277–78, 129 S. Ct. 846, 851, 172 L. Ed. 2d 650 (2009).

Simply put, Gordon's complaint of discrimination was entitled to the same consideration Lynch sought in the filing of his complaint, including the right to be free of retaliation for doing so. The record shows, without a genuine dispute of material fact, that the "adverse actions" about which Lynch complains resulted from investigation of Gordon's complaint to their mutual employer. There is absolutely nothing in the record, moreover, to suggest that the adverse actions were employer retaliation, other than that Gordon's cross-claim of discrimination followed his claim against her. The adverse actions were imposed by a mutual employer, conducting two, independent, unbiased investigations – and no allegation has been made that the investigations were tainted by favoritism or partiality whatsoever. The conclusions of those investigations were that Lynch's misogynistic conduct toward Gordon, which he, principally, did not deny, justified her complaint and the discipline imposed; and that Gordon's alleged discrimination against Lynch was unsubstantiated and, equally important, unactionable.

In short, viewing the record in the light most favorable to Lynch, as the Court must, there is no genuine dispute over whether legitimate concerns with Lynch's work performance and

behavior were pretext for the investigation and probationary status that followed his protected activity. In the absence of a triable issue of material fact, defendants' motion for summary judgment must be granted.[5]

## Conclusion

For the foregoing reasons, upon *de novo* review, the Court adopts Magistrate Judge Scanlon's R&R, as modified by this Memorandum & Order, as the opinion of the Court.

Defendants' motion for summary judgment is granted, and the case is dismissed.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
August 15, 2019

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge

---

[5] Neither party argues that the Court's analysis should be any different for plaintiff's Title VII claim than for his § 1981 and NYSHRL claims, which are "analytically identical" to Title VII claims, or his claim under NYCHRL, which is "broader than Title VII." *See* R&R at 39-42. Nor did either party file any objections o Judge Scanlon's conclusion that the outcome for all claims would be the same here. The Court observes, however, that even under the more generous NYCHRL standard, plaintiff has still failed to satisfy the "lesser burden of raising an issue as to whether the action was motivated at least in part by retaliatory animus." *Id.* at 41. The Court adopts Judge Scanlon's conclusion that the outcome is the same for all of plaintiff's claims here, and, therefore, all claims are dismissed.